**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| DAVID BRIGGS, MARCUS CARREON, ERIN CHARLTON, EMILY MALDONADO, KELSEY MORSE, ASHLEY PARKER, and KARYN WYGLE, individually and on Behalf of All Others Similarly Situated | NO. |
| | **PLAINTIFFS' CLASS ACTION COMPLAINT FOR DAMAGES** |
| Plaintiffs, | **DEMAND FOR JURY TRIAL** |
| vs. | |
| COSTCO WHOLESALE CORPORATION, a Washington corporation. | |
| Defendant | |

Plaintiffs David Briggs, Marcus Carreon, Erin Charlton, Emily Maldonado, Kelsey Morse, Ashley Parker, and Karyn Wygle ("Plaintiffs") on behalf of themselves and all others similarly situated, by and through counsel, bring this action against Defendant Costco Wholesale Corporation ("Defendant" or "Costco"). The allegations contained herein, which are based on Plaintiffs' knowledge of facts pertaining to themselves and their own actions and counsels' investigations, and upon information and belief as to all other matters, are as follows:

PLAINTIFFS' CLASS ACTION COMPLAINT - 1

**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

## NATURE OF THE CASE

1.      This class action arises from Costco's retention of windfall profits generated by unlawful tariffs imposed by the federal government under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701, *et seq*.

2.      Beginning in February 2025, the federal government imposed sweeping tariffs on imports from numerous countries under purported authority of the IEEPA. Those tariffs dramatically increased the cost of imported consumer goods sold in the United States.

3.      Major U.S. importers—including Costco—responded by increasing prices on consumer goods to offset the cost of these tariffs. As a result, American consumers paid higher retail prices for consumer goods reflecting the economic burden of those tariffs.

4.      On February 20, 2026, the Supreme Court of the United States held that the IEEPA-based tariffs were unlawful. *Learning Resources, Inc. v. Trump*, 607 U.S. ___ (2026).

5.      As a consequence of that decision, importers who paid those tariffs—including Costco—became entitled to refunds of the duties they previously paid to U.S. Customs and Border Protection ("CBP").

6.      The economic reality of the tariff regime, however, is that importers like Costco did not ultimately bear all the costs of the tariffs. Instead, the importers passed the elevated costs on to consumers in the form of higher retail prices.

7.      Costco therefore collected the tariff costs from consumers through elevated pricing, while simultaneously seeking refunds of the same tariff payments from the federal government.

8.      Unless restrained by this Court, Costco stands to recover the same tariff payments twice—once from consumers through higher prices and again from the federal government through tariff refunds, including interest paid by the government on those funds.

9.      Costco has made no legally binding commitment to return tariff-related overcharges to the consumers who actually paid them.

PLAINTIFFS' CLASS ACTION COMPLAINT - 2

10.     Instead, Costco's Chief Executive Officer publicly stated that any tariff refunds the company receives would merely be used to provide "lower prices and better values" to customers in the future—rather than compensating the specific consumers who paid the inflated prices during the tariff period.

11.     Such a promise does not make consumers who paid inflated prices resulting from the tariffs whole. To the extent any refunds are used to further such a promise, that promise merely shifts the benefit of those refunds to future shoppers while Costco retains the gains generated by the unlawful tariffs, at the expense of the specific consumers who paid the inflated prices.

12.     This lawsuit seeks to prevent that unjust result.

13.     Plaintiffs bring this action on behalf of millions of consumers who purchased goods from Costco during the tariff period and who paid inflated prices reflecting Costco's pass-through of unlawful tariffs.

14.     Plaintiffs seek restitution of those tariff overcharges, together with appropriate declaratory, injunctive, and monetary relief.

## JURISDICTION AND VENUE

15.     Federal subject-matter jurisdiction exists under 28 U.S.C. § 1332(d)(2) because: (a) at least one member of the class is a citizen of a state different from Defendant, (b) the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (c) none of the exceptions under that subsection apply to this action.

16.     The Court has personal jurisdiction over Defendant because Costco is headquartered in this district, conducts significant business transactions in this District, and because the wrongful conduct occurred in and emanated from this District.

17.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant's principal place of business in located in in this District in Issaquah, Washington, and a substantial

PLAINTIFFS' CLASS ACTION COMPLAINT - 3

**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

portion of the events and conduct giving rise to the claims occurred in the Western District of Washington.

**PARTIES**

18.     Plaintiff David Briggs is a resident and citizen of Shaker Heights, Ohio and a Costco member. During the Class Period, Plaintiff Briggs purchased goods from Costco that were imported from countries subject to the IEEPA tariffs. Plaintiff Briggs paid retail prices for those goods that were increased by Costco to account for the tariffs imposed on imported products. Plaintiff Briggs would not have paid those higher prices absent the unlawful tariffs and Costco's pass-through of those tariffs to consumers.

19.     Plaintiff Marcuss Carreon is a resident and citizen of San Pedro, CA and a Costco member. During the Class Period, Plaintiff Carreon purchased goods from Costco that were imported from countries subject to the IEEPA tariffs. Plaintiff Carreon paid retail prices for those goods that were increased by Costco to account for the tariffs imposed on imported products. Plaintiff Carreon would not have paid those higher prices absent the unlawful tariffs and Costco's pass-through of those tariffs to consumers.

20.     Plaintiff Erin Charlton is a resident and citizen of Broomall, Pennsylvania and a Costco member. During the Class Period, Plaintiff Charlton purchased goods from Costco that were imported from countries subject to the IEEPA tariffs. Plaintiff Charlton paid retail prices for those goods that were increased by Costco to account for the tariffs imposed on imported products. Plaintiff Charlton would not have paid those higher prices absent the unlawful tariffs and Costco's pass-through of those tariffs to consumers.

21.     Plaintiff Emily Maldonado is a resident and citizen of Kennewick, Washington and a Costco member. During the Class Period, Plaintiff Maldonado purchased goods from Costco that were imported from countries subject to the IEEPA tariffs. Plaintiff Maldonado paid retail prices for those goods that were increased by Costco to account for the tariffs imposed on

PLAINTIFFS' CLASS ACTION COMPLAINT - 4

imported products. Plaintiff Maldonado would not have paid those higher prices absent the unlawful tariffs and Costco's pass-through of those tariffs to consumers.

22. Plaintiff Kelsey Morse is a resident and citizen of Pasco, Washington and a Costco member. During the Class Period, Plaintiff Morse purchased goods from Costco that were imported from countries subject to the IEEPA tariffs. Plaintiff Morse paid retail prices for those goods that were increased by Costco to account for the tariffs imposed on imported products. Plaintiff Morse would not have paid those higher prices absent the unlawful tariffs and Costco's pass-through of those tariffs to consumers.

23. Plaintiff Ashley Parker is a resident and citizen of Richland, Washington and a Costco member. During the Class Period, Plaintiff Parker purchased goods from Costco that were imported from countries subject to the IEEPA tariffs. Plaintiff Parker paid retail prices for those goods that were increased by Costco to account for the tariffs imposed on imported products. Plaintiff Parker would not have paid those higher prices absent the unlawful tariffs and Costco's pass-through of those tariffs to consumers.

24. Plaintiff Karyn Wygle is a resident and citizen of Renton, Washington and a Costco member. During the Class Period, Plaintiff Wygle purchased goods from Costco that were imported from countries subject to the IEEPA tariffs. Plaintiff Wygle paid retail prices for those goods that were increased by Costco to account for the tariffs imposed on imported products. Plaintiff Wygle would not have paid those higher prices absent the unlawful tariffs and Costco's pass-through of those tariffs to consumers.

25. Defendant Costco Wholesale Corporation is a Washington corporation with its principal place of business at 999 Lake Drive, Issaquah, Washington 98027. Costco operates one of the largest retail chains in the world, with hundreds of warehouse stores throughout the United States and billions of dollars in annual sales. Costco is one of the largest importers of consumer goods in the United States. A significant portion of the products Costco sells are imported goods subject to IEEPA tariffs imposed by the United States government.

PLAINTIFFS' CLASS ACTION COMPLAINT - 5

## FACTUAL BACKGROUND

### A.    Costco's Business Model

26.    Costco is one of the largest retailers in the world and consistently ranks among the largest retail companies by global revenue. In recent industry rankings, Costco has been identified as the third-largest retailer globally, reflecting the massive scale of its operations and merchandise sales.[1]

27.    Costco operates a chain of membership-based warehouse stores that sell a wide range of consumer products, including groceries, electronics, appliances, clothing, household goods, furniture, sporting goods, and personal care products. The company sells merchandise both through its warehouse locations and through its online retail platform, offering consumers access to thousands of products sourced from both domestic and international suppliers.[2]

28.    Access to Costco's retail platform is conditioned on the purchase of an annual membership. Costco customers must pay an annual membership fee—typically ranging from approximately $65 to $130 per year—to shop at Costco warehouse stores or through Costco's online platform.[3]

29.    Costco markets its membership model around a core value proposition: offering members high-quality goods at prices that are lower than those typically available through other retail channels. Costco regularly advertises its commitment to low pricing and emphasizes that it operates on relatively thin merchandise margins in order to deliver value to its members.[4]

30.    To supply its warehouses with merchandise at scale, Costco imports enormous quantities of products from foreign manufacturers and suppliers. These imports include a wide range of goods sold in Costco warehouses.

---

[1] *See* Reuters, *Costco Wholesale beats quarterly comparable sales estimates*, Mar. 5, 2026, available at https://www.reuters.com

[2] *See* Costco Wholesale Corp., Form 10-K for the fiscal year ended Sept. 1, 2024.

[3] *Id.*

[4] *Id.*

PLAINTIFFS' CLASS ACTION COMPLAINT - 6

**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

31.    Imported goods therefore account for a substantial portion of Costco's retail sales in the United States. Public reporting and company disclosures indicate that approximately one-third of Costco's U.S. merchandise sales consist of imported goods, meaning that Costco relies heavily on international supply chains to stock its warehouses.

32.    Because Costco imports a significant portion of the goods it sells, the IEEPA tariffs directly increased Costco's cost of importing merchandise into the United States.

**B.    The IEEPA Tariffs**

33.    Beginning in February 2025, President Trump invoked the IEEPA to impose tariffs on imports from numerous foreign countries pursuant to a series of executive orders declaring national emergencies related to trade and supply chain concerns.[5]

34.    Those executive orders imposed sweeping tariffs on imports from key U.S. trading partners. The orders included duties of approximately 25 percent on many imports from Canada and Mexico and additional tariffs on imports from China that were layered on top of existing duties, resulting in substantially higher effective tariff rates on Chinese goods.[6]

35.    The tariffs significantly increased the cost of imported consumer goods entering the United States, particularly for retailers and other businesses that rely heavily on international supply chains to source merchandise—like Defendant Costco.[7]

36.    Under U.S. customs law, the importer of record is responsible for paying tariffs when goods enter the United States. Accordingly, importers of record—including major retailers such as Costco—were required to pay the IEEPA tariffs to U.S. CBPupon entry of covered merchandise into the country.[8]

---

[5] *See* Exec. Order No. 14194, *Imposing Duties To Address the Situation at Our Southern Border*, 90 Fed. Reg. 9,117 (Feb. 7, 2025); Exec. Order No. 14193, *Imposing Duties To Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9,113 (Feb. 7, 2025); Exec. Order No. 14195, *Imposing Duties To Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,121 (Feb. 7, 2025).

[6] *See* Reuters, *Trump Orders Tariffs on Canada, Mexico and China*, Feb. 1, 2025.

[7] *See* Mary Amiti, Stephen J. Redding & David Weinstein, *The Impact of the 2018–2019 Tariffs on Prices and Welfare*, 135 J. Econ. Persp. 187 (2020)

[8] *See* U.S. Customs & Border Prot., *Importing Into the United States: A Guide for Commercial Importers*.

PLAINTIFFS' CLASS ACTION COMPLAINT - 7

37.     Numerous importers challenged the legality of the IEEPA tariffs in the United States Court of International Trade, arguing that the President lacked statutory authority under IEEPA to impose tariffs of that nature.[9]

38.     On February 20, 2026, the Supreme Court of the United States held that the challenged tariff regime was unlawful and that IEEPA does not authorize the President to impose tariffs of the type challenged in that litigation and invalidated the tariff orders issued pursuant to that statute.[10]

39.     The Supreme Court's decision effectively eliminated the legal basis for the IEEPA tariffs and created a pathway for importers that had paid those duties—including large retailers like Costco—to seek refunds of the tariffs previously collected by the federal government.

**C.     Tariffs Are Economically Borne by Consumers**

40.     Economists and government agencies widely recognize that tariffs are largely borne by domestic consumers rather than foreign exporters or the importing firms that formally remit the duties.

41.     Economic studies examining recent U.S. tariff regimes consistently find that the cost of tariffs is passed through into higher prices paid by U.S. purchasers of imported goods.[11]

42.     When tariffs increase the cost of imported goods, retailers and other downstream sellers typically raise prices to offset those additional costs. Surveys of U.S. businesses conducted by the Federal Reserve Bank of New York during the recent tariff period found that a large majority of firms facing tariff-related cost increases passed at least some portion of those costs

---

[9] *See* Reuters, *Businesses Sue Over Trump's Tariffs*, Apr. 2025.

[10] *See Learning Res., Inc. v. Trump*, 607 U.S. ___ (2026)

[11] *See* Julian Hinz et al., *America's Own Goal: Who Pays the Tariffs?*, Kiel Inst. for the World Econ. Policy Brief (Jan. 19, 2026); see also Mary Amiti, Stephen J. Redding & David Weinstein, *The Impact of the 2018–2019 Tariffs on Prices and Welfare*, 135 J. Econ. Persp. 187 (2020)

PLAINTIFFS' CLASS ACTION COMPLAINT - 8

**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

through to their customers in the form of higher prices.[12] Companies consider tariffs to be costs that are to be incorporated into the pricing structure.

43.     Costco followed this same pattern during the tariff period. As a major importer of consumer goods, Costco faced increased costs resulting from tariffs on products sourced from foreign suppliers and took steps to address those cost pressures through pricing and merchandising decisions.

44.     Indeed, as detailed below, Costco executives publicly acknowledged that tariffs would affect pricing decisions and the company's cost structure. In those communications, Costco leadership explained that tariffs increased the company's merchandise costs and required Costco to evaluate price adjustments, sourcing strategies, and other operational responses designed to manage those additional expenses.

45.     As a result, consumers who purchased goods from Costco during the tariff period paid elevated prices reflecting the tariff-related cost increases incorporated into Costco's retail pricing.[13]

**D.     Costco's Statements Regarding Tariff Related Price Increases and Refunds**

46.     Costco publicly acknowledged, early in the tariff period, that tariffs would increase its costs and place upward pressure on consumer prices. On Costco's March 6, 2025 earnings call, Chief Executive Officer Ron Vachris stated that, given the events of the prior week, "it is difficult to predict the impact of tariffs," but that Costco's goal would be to "minimize the impact of related cost increases to our members." He further explained that approximately one-third of Costco's U.S. sales consisted of imported goods.[14]

---

[12] *See* Jaison R. Abel, Richard Deitz & Jason Bram, *Are Businesses Absorbing the Tariffs or Passing Them On to Their Customers?*, Fed. Rsrv. Bank of N.Y., Liberty Street Econ. (June 4, 2025), available at https://libertystreeteconomics.newyorkfed.org.)

[13] *See* Reuters, *Costco Evaluating Supply Chain Changes if Tariffs Trigger Price Hikes* (Mar. 7, 2025)

[14]    *See*    https://www.fool.com/earnings/call-transcripts/2025/03/06/costco-wholesale-cost-q2-2025-earnings-call-transc/

PLAINTIFFS' CLASS ACTION COMPLAINT - 9

EMERY | REDDY, PC
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

47.    That same day, Reuters reported that Costco was actively evaluating changes to its international supply chain if tariffs produced "big price hikes," and quoted Vachris as stating that Costco would work with suppliers to keep prices low and avoid charging consumers more where possible. Reuters also reported that Costco's leadership described tariffs as capable of causing meaningful price increases across imported merchandise categories.[15]

48.    Costco's public statements thus confirmed two critical points: first, that tariffs were increasing Costco's costs on imported goods; and second, that Costco was making pricing and sourcing decisions in direct response to those tariff-driven cost increases.

49.    By late spring 2025, Costco's executives were even more explicit that tariff-related inflation was already affecting prices on at least some merchandise. In Costco's May 29, 2025 earnings call, Chief Financial Officer Gary Millerchip stated that Costco remained committed to low prices but that "raising prices is always seen as a last resort."[16]

50.    However, Mr. Millerchip backtracked on that statement later in the call with his concession that Costco had indeed raised the prices on certain products, stating: "we saw inflation as a result from tariffs," and "we did increase some price there because we felt that was something that the member would be able to absorb."[17]

51.    That statement was not a denial that Costco had raised prices because of tariffs. To the contrary, the same May 2025 reporting and transcript materials reflect that Costco had already taken concrete measures in response to tariffs, including pulling forward imports, rerouting merchandise, and making selective pricing changes in categories affected by tariff-related cost inflation.

---

[15] *See* https://www.reuters.com/business/retail-consumer/costco-beats-quarterly-sales-estimates-bulk-buying-surge-2025-03-06/

[16] *See* https://seekingalpha.com/article/4791062-costco-wholesale-corporation-cost-q3-2025-earnings-call-transcript

[17] *Id.*

PLAINTIFFS' CLASS ACTION COMPLAINT - 10

52. Public reporting concerning Costco's May 2025 earnings call specifically stated that Costco had increased prices on some discretionary products due to tariffs, including flowers and other items affected by import-cost inflation. According to that reporting, Millerchip acknowledged that Costco did increase some prices on certain goods after tariff-related inflation affected Costco's cost structure.[18]

53. Costco's own public explanation for those pricing decisions was not that higher prices reflected ordinary competitive dynamics or unrelated inflation, but that Costco was responding to an "evolving environment with tariffs" and taking action to protect margins while managing member reaction to higher retail prices.[19]

54. Reuters likewise reported on April 22, 2025, that Costco executives said the company's "treasure hunt" merchandising model would allow it to adjust its merchandise mix and source products from countries not subject to tariffs. That statement again tied Costco's merchandising and pricing strategy directly to tariff exposure.[20]

55. These public admissions are consistent with Costco's broader financial disclosures during the Class Period. Costco reported strong, and in some periods improving, margins while simultaneously acknowledging tariff pressures, import rerouting, and selective pricing actions. Those facts support the inference that Costco did not simply absorb the full cost of the unlawful tariffs; rather, Costco passed on at least part of those costs to consumers through higher retail prices.

56. Costco later confirmed, after the Supreme Court invalidated the IEEPA tariffs, that tariff changes had already affected consumer pricing. On March 5, 2026, Reuters reported that Costco had already reduced prices on some items—including textiles, bedding, and cookware—after tariffs were reduced on certain imports, including from China. That reporting

---

[18] *See* https://finance.yahoo.com/news/americans-demanding-refunds-180-billion-174939469.html

[19]*See* https://seekingalpha.com/article/4791062-costco-wholesale-corporation-cost-q3-2025-earnings-call-transcript

[20] *See* https://www.reuters.com/business/how-companies-are-responding-trumps-tariffs-2025-03-07/

PLAINTIFFS' CLASS ACTION COMPLAINT - 11

supports the converse proposition as well: when tariffs rose, Costco's prices on affected imported goods rose; and when tariff pressure eased, Costco lowered prices on at least some affected items.[21]

57.     On that same March 2026 post-earnings call, Costco Chief Executive Officer Ron Vachris stated that if Costco received tariff refunds, Costco would seek to provide customers "better value" and lower prices going forward, rather than refunding the consumers who had already paid elevated prices during the tariff period. Public reporting described this as Costco's plan to "lower prices and provide better value" if refunds materialized.[22]

58.     Costco's own public statements therefore establish a coherent timeline: Costco acknowledged tariff-driven cost increases; Costco altered sourcing and pricing in response to those tariffs; Costco selectively increased prices on affected goods during the tariff period; Costco selectively lowered prices on some affected goods immediately after the tariffs were invalidated and Costco later indicated that any refund would be used prospectively, not to reimburse the consumers who actually bore those higher prices.

59.     Those admissions support the inference that Plaintiffs and Class members paid tariff-inflated prices at Costco during the Class Period, while Costco now seeks to retain both the consumer pass-through and any government refund of the same unlawful tariff charges.

### E.  Costco's Lawsuit Seeking Tariff Refunds

60.     On November 28, 2025, Costco filed suit in the United States Court of International Trade challenging the legality of the tariffs imposed under IEEPA. Costco brought the action in its capacity as a U.S. importer that had paid duties under the challenged tariff regime.[23]

---

[21]  *See*   https://www.reuters.com/business/retail-consumer/costco-wholesale-beats-quarterly-comparable-sales-estimates-2026-03-05/

[22]  *See*   https://www.reuters.com/business/retail-consumer/costco-wholesale-beats-quarterly-comparable-sales-estimates-2026-03-05/

[23] *See Costco Wholesale Corp. v. United States*, No. 1:25-cv-00316 (Ct. Int'l Trade filed Nov. 28, 2025

PLAINTIFFS' CLASS ACTION COMPLAINT - 12

61.    In that action, Costco sought declaratory and injunctive relief invalidating the IEEPA tariffs and requested refunds of all duties collected from Costco under those tariff orders.[24]

62.    Costco's lawsuit was one of many similar actions filed by importers challenging the IEEPA tariff regime. Those cases were consolidated with related litigation pending in the Court of International Trade and were stayed pending the Supreme Court's resolution of the legality of the tariffs.

63.    As described above, in February 2026, the Supreme Court held that the President's tariff regime exceeded the statutory authority granted by IEEPA and invalidated the challenged tariff orders.[25] Following the SCOTUS decision, importers that had paid IEEPA tariffs—including Costco—became eligible to pursue refunds of those duties.

64.    On March 4, 2026, the Court of International Trade, in *Atmus Filtration, Inc. v. United States*, ordered U.S. CBP to stop liquidating IEEPA duties and to reliquidate previously liquidated IEEPA duties where possible, and indicated that the relief extended to "all importers of record" that paid IEEPA duties, including importers that had not filed their own refund suits.[26]

65.    The potential refund pool resulting from the invalidation of the IEEPA tariffs is enormous. Public reporting concerning the refund proceedings states that U.S. CBP estimated an "unprecedented volume of refunds," potentially involving 53,173,939 refunds across 330,566 importers if each entry subject to IEEPA duties is entitled to a refund.[27]

66.    Costco is among the country's largest importers of consumer goods and therefore stands to recover substantial sums if tariff refunds are paid. Industry rankings published by the

---

[24] *Id.*

[25] *See Learning Res., Inc. v. Trump*, 607 U.S. ___ (2026).

[26] *See Atmus Filtration, Inc. v. United States*, No. 26-01259, (Ct. Int'l Trade Mar. 4, 2026), ECF No. 21.

[27] *See* Thompson Hine LLP, *CIT Suspends Earlier Order Directing IEEPA Tariff Refunds* (Mar. 6, 2026), https://www.thompsonhinesmartrade.com/2026/03/cit-suspends-earlier-order-directing-ieepa-tariff-refunds/.)

PLAINTIFFS' CLASS ACTION COMPLAINT - 13

**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

*Journal of Commerce* place Costco among the Top 100 importers into the United States based on annual containerized import volume.[28]

67.     Given Costco's scale as a national retailer and major importer, Costco can expect to recover significant tariff refunds corresponding to duties it paid during the Class Period. Those expected refunds are especially significant here because Costco previously passed tariff-related cost increases through to consumers in the form of higher retail prices, meaning Costco now seeks to recover from the government duties whose economic burden was borne, in whole or in part, by Plaintiffs and Class members.

68.     In practical terms, Costco stands to receive a windfall: it has already recouped tariff costs from consumers through higher prices, and it now stands in line to recover those same unlawful tariff payments from the federal government.

### **CLASS ALLEGATIONS**

69.     A class action is the proper forum to bring Plaintiffs' claims under FRCP 23. The potential Class is so large that joinder of all members would be impracticable. Additionally, there are questions of law or fact common to the Class, the claims or defenses of the representative parties are typical of the claims or defenses of the Class, and the representative parties will fairly and adequately protect the interests of the Class.

70.     This action satisfies all of the implicit and explicit requirements of FRCP, including numerosity, commonality, typicality, adequacy, predominance and superiority.

71.     **Numerosity**: the Class is so numerous that joinder of all members is impracticable.  While the exact number is not known at this time, it is generally ascertainable by appropriate discovery.  Given the consumer base of Costco, the class numbers in the hundreds of thousands or millions of consumers.

---

[28] *See Journal of Commerce*, *Top 100 U.S. Importers*, https://www.joc.com/resources/special-reports/top-rankings/top-100-us-importers.

PLAINTIFFS' CLASS ACTION COMPLAINT - 14

72.   **Commonality:** the claims made by Plaintiffs meet the commonality requirement because they present shared questions of law and fact, and resolving these questions will resolve the classwide litigation. These shared questions predominate over individual questions, and they include, without limitation:

a.   whether Costco paid tariffs imposed under the International Emergency Economic Powers Act ("IEEPA") on imported goods during the Class Period;

b.   whether Costco increased retail prices on goods sold to consumers in response to those tariffs;

c.   whether Costco passed through some or all of the tariff costs to consumers through higher prices;

d.   whether Costco sought or will seek refunds of those tariffs from the federal government;

e.   whether Costco's retention of tariff refunds corresponding to tariff costs paid by consumers constitutes unjust enrichment;

f.   whether Costco's conduct was unfair or deceptive under applicable consumer protection laws; and

g.   the appropriate measure of restitution, damages, or other relief resulting from Costco's conduct.

73.   **Typicality**: Plaintiffs' claims are typical of those of the other Class members because Plaintiff, like every other Class member, bought products from Costco subject to tariff related price increases.

74.   The claims of the Class Representative Plaintiffs are furthermore typical of other Class members because they make the same claims as other Class members. Plaintiffs have an interest in seeking compensation from Defendant.

75.   **Adequacy**: Plaintiffs will fairly and adequately represent and protect the interests of the Class in that they have no disabling conflicts of interest that would be antagonistic to those

PLAINTIFFS' CLASS ACTION COMPLAINT - 15

**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

of the other members of the Class. Plaintiffs seek no relief that is antagonistic or adverse to the members of the Class and the infringement of the rights and the damages they have suffered are typical of other Class members.

76.   **Superiority:** The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of class members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain class members, who could not individually afford to litigate a complex claim against large corporate defendants. Further, even for those class members who could afford to litigate such a claim, it would still be economically impractical.

77.   The nature of this action and the nature of Washington laws available to Plaintiffs and the Class makes the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiffs and the Class for the wrongs alleged. Without the class action mechanism, Defendant would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class member with superior financial and legal resources; and the costs of individual suits could unreasonably consume the amounts that would be recovered. Likewise, proof of a common course of conduct to which Plaintiffs were exposed is representative of that experienced by the Class, and will establish the right of each member of the Class to recover on the cause of action alleged; and Individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

78.   The proposed class is described as follows:

All persons in the United States who purchased goods from Costco during the period February 1, 2025, through February 24, 2026, that were subject to tariffs imposed under IEEPA.

PLAINTIFFS' CLASS ACTION COMPLAINT - 16

79.     Plaintiffs reserve the right to modify or amend the definition of the proposed class and to modify, amend or remove proposed subclasses, before the Court determines whether certification is appropriate and as the parties engage in discovery.

80.     Plaintiffs will fairly and adequately protect the interests of the Class. The interests of the class representative are consistent with those of the other members of the Class. In addition, Plaintiffs are represented by experienced and able counsel who have expertise in the areas of tort law, trial practice, and class action representation.

81.     The class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Because of the number and nature of common questions of fact and law, multiple separate lawsuits would not serve the interest of judicial economy.

82.     Excluded from the Class are:

a.     Defendant and any entities in which Defendant has a controlling interest;

b.     Any entities in which Defendant's officers, directors, or employees are employed and any of the legal representatives, heirs, successors, or assigns of Defendant;

c.     The Judge to whom this case is assigned and any member of the Judge's immediate family and any other judicial officer assigned to this case;

d.     All persons or entities that properly execute and timely file a request for exclusion from the Class; and

e.     Any attorneys representing the Plaintiffs or the Class.

## CLAIMS FOR RELIEF

### COUNT I
**Unjust Enrichment**
**(On behalf of Plaintiffs and the Class)**

83.     Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

PLAINTIFFS' CLASS ACTION COMPLAINT - 17

**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

84.     Plaintiffs and the Class have conferred a benefit upon Defendant in the form of the money Defendant received from them for the purchase of goods as Costco stores.

85.     Defendant appreciates and/or has knowledge of the benefits conferred upon it by Plaintiffs and the Class.

86.     Under principles of equity and good conscience, Defendant should not be permitted to retain the money obtained from Plaintiffs and the members of the Class, which Defendant has unjustly obtained as a result of its unlawful price increases on goods subject to tariffs. As it stands, Defendant has retained profits generated from its sales of products subject to tariff related price increases and should not be permitted to retain those ill-gotten profits.

87.     Accordingly, Plaintiffs and the Class seek full disgorgement and restitution of any money Defendant has retained as a result of the unlawful and/or wrongful conduct alleged herein.

## COUNT II
### Money Had and Received
### (On behalf of Plaintiffs and the Class)

88.     Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

89.     Plaintiffs allege this claim individually and on behalf of the proposed class.

90.     Defendant received money from Plaintiffs and from each member of the proposed Class in the form of a tariff surcharge. The Supreme Court has determined that the tariffs were unlawful.

91.     The money belonged to Plaintiffs and to each member of the proposed Class.

92.     Defendant has not returned the money.

93.     It will give offense to equity and good conscience if Defendant is permitted to retain the tariff surcharge. Plaintiffs seek the return of the money in an amount to be proven at trial.

PLAINTIFFS' CLASS ACTION COMPLAINT - 18

94.     Plaintiffs seek all remedies available under the law, including, if available, actual damages, nominal damages, compensatory damages, punitive damages, and injunctive relief, and other remedies available to him.

### COUNT III
**Violations of the Washington Consumer Protection Act, § RCW 19.86.010, *et seq.***
**(On behalf of Plaintiffs and the Class)**

95.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

96.     Washington's Consumer Protection Act, RCW § 19.86.010, *et seq.* ("CPA"), protects consumers by promoting fair competition in commercial markets for goods and services.

97.     To achieve that goal, the CPA prohibits any person from using "unfair methods of competition or unfair or deceptive acts or practices in the conduct of any trade or commerce. . . ." RCW § 19.86.020.

98.     Costco engaged in unfair and deceptive acts by: (i) raising prices due to tariffs; (ii) representing that prices remained competitive; (iii) failing to disclose that it intended to seek tariff refunds; and (iv) retaining tariff refunds despite having passed the costs to its customers.

99.     Defendant's wrongful conduct occurred in the conduct of trade or commerce—*i.e.*, while Defendant was engaged in the operation of its stores nationwide.

100.    Defendant has profited immensely from its unlawful conduct.

101.    As a result of Defendant's conduct, Plaintiffs and the Class members were injured in their business or property—i.e., economic injury—in that they paid inflated prices for goods subject to tariffs.

102.    As described throughout this Complaint, Defendant's conduct (1) caused substantial injury that is (2) not reasonably avoidable by consumers and that (3) is not outweighed by the benefits to consumers or competition.

103.    Defendant's unfair or deceptive conduct proximately caused Plaintiffs' and the Class members' injury because, but for the challenged conduct, Plaintiffs and the Class members

PLAINTIFFS' CLASS ACTION COMPLAINT - 19

**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

would not have paid inflated prices for goods subject to tariffs and they did so as a direct, foreseeable, and planned consequence of that conduct.

104. Plaintiff, individually and on behalf of the Class, seeks to enjoin further violation and recover actual damages and treble damages, together with the costs of suit, including reasonable attorneys' fees.

**COUNT IV**
**Violations of Ohio Revised Code § 1345.02 (Ohio Consumer Sales Practices Act or "OCSPA") (On behalf of Plaintiff Briggs and the Class)**

105. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

106. Plaintiff alleges this claim individually and on behalf of the proposed Class.

107. The OCSPA makes unlawful a supplier's unfair, deceptive, and/or unconscionable act or practice "in connection with a consumer transaction . . . whether it occurs before, during, or after the transaction." Ohio Rev. Code §§ 1345.02(A), 1345.03(A).

108. Defendant is a supplier under the OCSPA and engaged in a consumer transaction through the sale of Defendant's products to consumers, including Plaintiffs and the Class.

109. In connection with the sale of Defendant's products to consumers including Plaintiff and the Class, Defendant committed unfair, deceptive, and/or unconscionable acts.

110. As alleged herein, Defendant's retention of tariff refunds, despite having shifted those costs to consumers via tariff surcharges, is an unfair, deceptive, and/or unconscionable act under the general directive in Ohio Revised Code § 1345.02(A) and Ohio Revised Code § 1345.03(A). Plaintiff and the members of the proposed Class paid more than the value they received, and Defendant unlawfully failed to return resulting surplus. This was unscrupulous, outrageous, offensive to the public conscience, and/or marked by injustice, partiality, or deception.

111. Furthermore, the promises and omissions regarding cost savings available to Costco members have the likelihood of inducing in the mind of a consumer a belief that was not in accordance with the facts. And in fact, Defendant's representations and omissions did cause

PLAINTIFFS' CLASS ACTION COMPLAINT - 20

**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

Plaintiffs and Class Members to have beliefs about cost savings that were not in accordance with facts.

112.   Defendant had notice that its conduct was unlawful under the OCSPA based on several judgments in the Ohio Public Inspection File ("PIF"), including but not limited to: *Celebrezze v. Fleskes*, Case No. 88 914, PIF No. 10001015 (Montgomery, Cnty. Ohio C.P.); *Cordray v. USA Direct, Inc.*, Case No. A0807777, PIF No. 10002838 (Hamilton Cnty., Ohio C.P.).

113.   Defendant also committed per se violations of the OCSPA under Ohio Revised Code §§ 1345.02(B)(1), (5), (8), Ohio Revised Code §§ 1345.03(B)(1), (2), (3), (5), (6), and Ohio Administrative Code §§ 109-4-3-02 and 109-4-3-12.

114.   Defendant's unfair, deceptive, and/or unconscionable conduct was a substantial factor and proximate cause of Plaintiff's and the Class's injuries.

115.   Plaintiffs respectfully request an order under Ohio Revised Code § 1345.09(D) declaring Defendant's conduct unlawful, enjoining it from committing further violations of the OCSPA, and awarding any other relief the Court finds appropriate.

116.   Plaintiffs and the Class are entitled to damages under Ohio Revised Code § 1345.09, along with an award of reasonable attorneys' fees and costs under Ohio Revised Code § 1345.09(F).

**COUNT V**
**Violation of California's Unfair Competition Law ("UCL")**
**Cal Bus. & Prof. Code § 17200, *et seq*.**
**(On behalf of Plaintiff Carreon and the Class)**

117.   Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

118.   Defendant engaged in unlawful and unfair business practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq*. which prohibits unlawful, unfair, or fraudulent business acts or practices ("UCL").

119.   Defendant's conduct is an unfair business practice under the UCL because it was immoral, unethical, oppressive, and unscrupulous and caused substantial harm. Costco engaged

PLAINTIFFS' CLASS ACTION COMPLAINT - 21

in unfair and deceptive acts by: (i) raising prices due to tariffs; (ii) representing that prices remained competitive; (iii) failing to disclose that it intended to seek tariff refunds; and (iv) retaining tariff refunds despite having passed the costs to its customers.

120.    Defendant's wrongful conduct occurred in the conduct of trade or commerce—*i.e.*, while Defendant was engaged in the operation of its stores nationwide.

121.    Defendant has profited immensely from its unlawful conduct.

122.    As a result of Defendant's conduct, Plaintiffs and the Class members were injured in their business or property—i.e., economic injury—in that they paid inflated prices for goods subject to tariffs.

123.    As described throughout this Complaint, Defendant's conduct (1) caused substantial injury that is (2) not reasonably avoidable by consumers and that (3) is not outweighed by the benefits to consumers or competition.

124.    Defendant's unfair or deceptive conduct proximately caused Plaintiffs' and the Class members' injury because, but for the challenged conduct, Plaintiffs and the Class members would not have paid inflated prices for goods subject to tariffs and they did so as a direct, foreseeable, and planned consequence of that conduct.

125.    The injuries to Plaintiffs and the Class greatly outweigh any alleged countervailing benefit to consumers or competition under all of the circumstances.

126.    There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misconduct alleged in this complaint.

127.    Therefore, Plaintiffs and the Class are entitled to equitable relief, including restitution of all monies paid to or received by Defendant; disgorgement of all profits accruing to Defendant because of its unfair and improper business practices; a permanent injunction enjoining Defendant's unlawful and unfair business activities; and any other equitable relief the Court deems proper.

PLAINTIFFS' CLASS ACTION COMPLAINT - 22

## COUNT VI
### Declaratory Relief, 28 U.S.C. § 2201
### (On behalf of Plaintiffs and the Class)

128.   Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

129.   Plaintiffs allege this claim individually and on behalf of the proposed Class.

130.   Federal courts have the power "to declare the rights and other legal relations of any interested party seeking such a declaration." 28 U.S.C. § 2201(a).

131.   Plaintiffs' claims present an actual controversy as to the rightful ownership of the tariff surcharges paid to Defendant.

132.   Plaintiffs have suffered an injury by having been required to pay Defendant a tariff surcharge because of the subject tariffs on Defendant's product. And Plaintiffs will imminently suffer an injury by Defendant's unlawful retention of the tariff refund.

133.   This Court can exercise its equitable power to enter a declaratory judgment that retention of the tariff surcharges paid by Plaintiffs but refunded to Defendant is unlawful for any of the above reasons.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and members of the proposed class pray for relief and judgment against Defendant, as follows:

    a.   For an order certifying the proposed classes, appointing Plaintiffs and his counsel to represent the proposed class and notice to the proposed classes to be paid by Defendant;

    b.   For damages suffered by Plaintiffs and members of the proposed class;

    c.   For restitution to Plaintiffs and the proposed class of all monies wrongfully obtained by Defendant;

    d.   For injunctive relief requiring Defendant to cease and desist from engaging in the unlawful, unfair, and/or deceptive practices alleged in the Complaint;

PLAINTIFFS' CLASS ACTION COMPLAINT - 23

**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (916) 823-6955 • Fax: (206) 441-9711

e.  An order awarding declaratory relief, retrospective and prospective injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and injunctive relief to remedy Defendant's past conduct;

f.  For Plaintiffs' reasonable attorneys' fees, as permitted by law;

g.  For Plaintiffs' costs incurred;

h.  For pre-judgment and post-judgment interest at the maximum allowable rate on any amounts awarded; and

i.  For such other and further relief that this Court deems just and proper under equity or law, including the award of punitive damages.

DATED this 27th day of March, 2026.          Respectfully submitted,

By: /s/ M. Anderson Berry
    M. Anderson Berry, WSBA No. 63160

By: /s/ Timothy Emery
    Timothy Emery, WSBA No. 34078

By: /s/ Brook Garberding
    Brook Garberding, WSBA No. 37140

Gregory Haroutunian*
Brandon P. Jack*
**EMERY REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: 916.823.6955
anderson@emeryreddy.com
emeryt@emeryreddy.com
brook@emeryreddy.com
gregory@emeryreddy.com
brandon@emeryreddy.com

Gary M. Klinger*
**MILBERG, PLLC**
227 W. Monroe Street, Suite 2100

PLAINTIFFS' CLASS ACTION COMPLAINT - 24

Chicago, IL 60606
Telephone: 866.252.0878
*gklinger@milberg.com*

Terence R. Coates*
Dylan J. Gould*
**MARKOVITS, STOCK
& DEMARCO, LLC**
119 E. Court Street, Suite 530
Cincinnati, OH 45202
Telephone: (513) 651-3700
*tcoates@msdlegal.com*
*dgould@msdlegal.com*

Zachary Arbitman*
Nicole A. Maruzzi*
**FELDMAN SHEPHERD
WOHLGELERNTER TANNER
WEINSTOCK & DODIG, LLP**
1845 Walnut Street, 21st Floor
Philadelphia, PA 19103
Telephone: (215) 567-8300
*zarbitman@feldmanshepherd.com*
*nmaruzzi@feldmanshepherd.com*

*Counsel for Plaintiffs*

**Pro Hac Vice* applications forthcoming

PLAINTIFFS' CLASS ACTION COMPLAINT - 25